E-FILED
Thursday, 18 August, 2005  01:27:28 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

MICAH BACUS,                          )
                                  )
      Plaintiff,          )
                                  )
      v.                  )   No. 04-3137
                                  )
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                  )
      Defendant.          )

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff Micah Bacus appeals from a final decision of the Social

Security Administration (SSA) denying his application for Supplemental

Security Income (SSI) under chapter XVI of the Social Security Act, 42

U.S.C. §§ 423(d) and 1382c.  Bacus brings this appeal pursuant to 42

U.S.C. § 405(g).  The parties have consented to a determination of this

case by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636.

Order, December 10, 2004 (d/e 9).  The parties have filed cross-motions

for summary judgment or affirmance pursuant to Local Rule 8.1(D).

Plaintiff's Motion for Summary Judgment (d/e 10); Defendant's Motion for

Summary Affirmance (d/e 17).  For the reasons set forth below, the Court

determines that the SSA's decision is supported by the law and the evidence.  The SSA's Motion for Summary Affirmance is therefore allowed, and Bacus' Motion for Summary Judgment is denied.

## STATEMENT OF FACTS

A.   Medical History

Bacus was born on March 1, 1981.  He graduated from high school in 2000.  At the time of the administrative hearing, Bacus was in his second year of college at Lincoln Land Community College.  Bacus was hospitalized and diagnosed with hydrocephalus in September 2000.[1]  Dr. Dennis McManus first treated Bacus on October 27, 2000.  Dr. McManus' overall impression was noncommunicating hydrocephalus, and he noted that the CT scan showed "dramatic evidence of hydrocephalus." Administrative Record (d/e 6) (A.R.), p. 171.  He recommended formal neuropsychometric testing and follow up.  Bacus had follow-up appointments with Dr. McManus on December 15, 2000, March 16, 2001, May 25, 2001, January 11, 2002, and May 10, 2002.  The records from these visits indicate Dr. McManus' impression that Bacus' symptoms were

---

[1]Webster's Collegiate Dictionary defines "hydrocephalus" as "an abnormal increase in the amount of cerebrospinal fluid within the cranial cavity that is accompanied by expansion of the cerebral ventricles, enlargement of the skull and esp. the forehead, and atrophy of the brain."  MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 10th ed. 567 (1993).

improving.  The records from the May 10, 2002, visit state, "At this juncture, this patient's general neurologic condition is improved."  Id. at 305.  At that time, Dr. McManus recommended follow up in one year.

Bacus had significant problems with depression as a teenager, which required a period of hospitalization.  He has been under the care of Dr. William Forsyth for depression since November 2, 1998.  Bacus provides a copy of a November 13, 2002, letter from Dr. Forsyth, which is referenced in Bacus' appeal of the ALJ's decision.  See A.R. at 11.  While the administrative record contains medical records from Dr. Forsyth; the letter is not contained in the administrative record.  See A.R. at 173-205. Therefore, it is unclear whether the ALJ or the Appeals Council considered it.  Bacus describes that letter as a summary of Dr. Forsyth's treatment and opinions regarding his depression.  The letter states that Bacus "has dealt with a moderate to severe level of depression since 1997."  Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment (d/e 13) (Plaintiff's Memorandum), Ex. B, November 13, 2002, Letter from William A. Forsyth, M.D. to Dennis W. Fox.  Dr. Forsyth noted that Bacus had a significant level of impairment in his academic functioning and peer group interactions.  Dr. Forsyth stated that Bacus was "currently stable in

terms of his depression" but "functioning at a lower level than would be expected given his potential."  Id.  Dr. Forsyth opined that Bacus was "at risk of future relapses and residual symptoms of depression" that would "significantly impair his ability to maintain competitive employment in the future."  Id.

Dr. Ronald Zec performed neuropsychological testing on Bacus on January 25, 2001, November 15, 2001, and February 1, 2002.  Following the February 2002 testing, Dr. Zec characterized Bacus as "displaying an overall improvement."  A.R. at 267.  Dr. Zec noted that Bacus "still display[ed] selective areas of clear cognitive impairments compared to his age group" and identified certain areas of impairment including new learning, memory, and timed processing speed.  Id.  Dr. Zec observed that Bacus' impaired memory scores were inconsistent with his high school grades of A's and B's.  Dr. Zec opined that perhaps Bacus' new learning and memory had been affected by falls that he had had in which he hit his head.  Dr. Zec concluded his February 2002 report by noting that Bacus' "mother was hoping that he would get a job this summer and/or do volunteer work (e.g., he could help teach elderly in the nursing home how use [sic] a computer – his mother said he is very patient).  As his mother

pointed out, the problem with a job is that he is neither fast nor focused, but if he does get a job then it would be very helpful if he were to have a job coach."  Id.  at 268.

Bacus' prior attorney referred him for a psychological consultation with Dr. James Hurley on August 18, 2001.  Dr. Hurley observed that Bacus' concentration, overall persistence, and pace were poor.  He characterized Bacus' sustained concentration as "deficient."  A.R. at 244. Dr. Hurley reviewed Dr. Zec's records from January 2001.  Considering all of the information, Dr. Hurley concluded that, "[a]t present, given his problems with short term memory and processing speed, persistence and pace, he is not a candidate for competitive employment due to the fact that he could not sustain that type of pace of a routine work day."  Id. at 246-47.

In May 2001, Bacus was examined by Dr. Russ Taylor, a psychologist,  on referral from the Illinois Office of Rehabilitation Services, Disability Determination Division in connection with his application for disability benefits.  Dr. Taylor conducted a mental status examination that he characterized as "a valid representation of [Bacus'] current functioning." A.R. at 219.  At the time of the examination, Dr. Taylor noted that Bacus had not yet started college and that Bacus questioned "whether he could

get himself organized well enough to complete a formal education." Id. at 220.  It appeared to Dr. Taylor that Bacus "had some difficulty maintaining his mental control and concentration" for sustained tasks.  Id. at 222.  Dr. Taylor's diagnosis included "Major depressive disorder in fair remission with reported adequate response to medication."  Id. at 224.

Bacus was also examined by Dr. Joseph Kozma in May 2001 in connection with his application for disability benefits.  Dr. Kozma opined that Bacus' major problem seemed to be psychological or psychiatric in nature, noting that his depression "renders him nonfunctional or possibly borderline  functional."  A.R. at 217.  Dr. Kozma noted that some of Bacus' clumsiness and lack of organization may be part of the depression although hydrocephalus could also produce similar symptoms.

B.    Administrative Hearing

Bacus filed his application for SSI benefits on November 22, 2000.  His claim was denied initially and on reconsideration.  Bacus requested an administrative hearing, which was held November 20, 2002.  The Administrative Law Judge (ALJ) heard testimony from Bacus; Dr. Chrisann

Geist, a vocational expert; Bacus' mother, Heather Bacus; and Ted
Fletcher, Bacus' youth minister.

Bacus testified that he was taking four college classes at the time of
the hearing.  When asked about his grades in college, Bacus stated that he
had received all A's and B's, except for a C in a public speaking course.
He testified that he lived with his parents and had a valid driver's license.
He stated that he drove around his hometown of Jacksonville, Illinois, but
that his parents did not allow him to drive out of town.  Bacus testified that
his college classes were held in Jacksonville and that he drove himself to
class.

Bacus reported two prior jobs, both with his college.  In the spring of
2002, Bacus worked as an assistant in the computer lab, for two hours, two
days a week.  The position was eliminated due to budget cuts.  Prior to the
computer assistant job, Bacus worked as a library page, re-shelving books
and, on occasion, checking materials out to patrons.  He explained that the
page job was "a little rocky" because he had trouble focusing and would not
re-shelve the books quickly enough.

Bacus testified that he had poor short term memory and was easily
distracted from tasks.  He indicated that he had persistent low level

headaches and that he saw a psychiatrist about twice a year for

prescription medication checks.  Bacus stated that he liked to read and to

watch television and movies.  He testified that he was currently writing a

short novel.  Bacus stated that he used the computer for word processing,

and also, that he used the internet and e-mail.  With respect to household

chores, Bacus stated that he took care of the family dog, changed the cat's

litter box, and loaded and unloaded the dishwasher.  Bacus also testified

that he did his own laundry and bathed and dressed himself.

The vocational expert then testified.  The ALJ asked the vocational

expert to

> assume an individual who 21 years old [sic] with a high school
> education and college courses as described by Mr. Bacus.
> And, for purposes of this hypothetical, let's assume no past
> relevant work so we're talking about unskilled entry level work.
> Work which would not require climbing or work at unprotected
> heights or around unprotected hazardous machinery.  And no
> jobs would be rapid pace work like assembly where you're
> working by yourself and keep up a steady rapid pace.  Can you
> give me some examples of jobs that would fit the hypothetical?

A.R. at 331.  The vocational expert responded that such a person could

perform  janitorial or guard/doorkeeper work.  When asked by the ALJ, the

vocational expert expanded her answer to include receptionist, information

clerk, and cashier activities, which she noted included rapid response.

Bacus' attorney asked the vocational expert whether the distractability  described in Bacus' testimony and his inability to focus to complete the task of shelving books would rule out competitive employment.  She replied that it would.  She explained that short term memory problems are problematic in unskilled entry level jobs because it is unreasonable to assume that the necessary cueing would be available.[2]

Bacus' mother also testified.  She stated that Bacus was slow in completing tasks and easily distracted.  She testified that he needed some prompting with respect to personal hygiene and classified his organizational skills as "poor."  A.R. at 341.  Bacus' mother noted that Bacus often misplaced items and needed external prompting on a regular basis to accomplish day to day tasks.

Finally, Bacus' youth minister Ted Fletcher testified.  Fletcher stated that he had known Bacus for five years at the time of the administrative hearing and had interacted with him in connection with church youth group activities and trips, although Fletcher testified that he had less contact with

---

[2]The vocational expert explained "cueing" as a vocational term which covers "pulling the person back to focus."  A.R. at 336.  The cueing may be verbal, touch, or a signal.

Bacus after Bacus started college.  Fletcher noted that Bacus misplaced
items much more frequently than his peers.

C.    The ALJ's Decision

The ALJ issued her decision on March 12, 2003, concluding that
Bacus was not disabled.  In reaching this conclusion, the ALJ followed the
five-step analysis set out in 20 C.F.R. § 416.920.  The analysis requires a
sequential evaluation of (1) whether claimant is engaged in substantial
gainful activity; (2) the severity and duration of claimant's impairment; (3)
whether the impairment equals a listed impairment in Appendix 1; (4)
whether the impairment prevents claimant from doing his past relevant
work; and (5) whether claimant can perform other work, given his residual
functional capacity, age, education, and past work experience.  20 C.F.R.
§ 416.920(a)(4).  The claimant has the burden of presenting evidence and
proving the issues on the first four steps.  The SSA has the burden on the
last step; the SSA must show that, considering the listed factors, the
person can perform some type of gainful employment that exists in the
national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Roth
v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).

The ALJ determined that Bacus met his burden on the first two steps of the analysis, but concluded that Bacus failed to demonstrate that his impairment was severe enough to equal an impairment listed on Appendix 1.  A.R. at 18.  She then considered whether he retained the residual functional capacity to perform his past relevant work (step four) or other work existing in significant numbers in the national economy (step five).  Id. at 19.

In assessing Bacus' residual functional capacity, the ALJ noted Dr. Taylor's conclusion that Bacus' major depressive disorder was in fair remission after a favorable response to medication.  Turning to the hydrocephalus, the ALJ recognized Bacus' mild memory deficits associated with this condition.  However, she also noted Bacus' above-average IQ, his improving test scores, the fact that he had been attending college for two years earning above-average grades, and the fact that he had worked part-time as a computer assistant.  The ALJ noted that Bacus drove, generally appeared to be unrestricted in his performance of daily activities, and used a computer for writing, research, e-mail, and playing games.  The ALJ pointed to Dr. McManus' submissions which stated that Bacus was showing improvement, noting his headaches were less severe, his gait was

near normal, he had no neurological or other medical problems, and his cognition was improving.

The ALJ then considered Dr. Hurley's assessment that Bacus was incapable of engaging in competitive employment. She  noted that Dr. Hurley was an examining, rather than a treating, source, and that his report was not prepared for the purposes of treatment. She found Dr. Hurley's assessment to be directly contradicted by Bacus' description of his daily activities and abilities. She noted that Dr. Hurley's report did not discuss Bacus' actual functioning.

Finally, the ALJ considered the testimony presented at the hearing. The ALJ found Bacus generally credible, but declined to fully credit his testimony regarding his distractability, noting that he studied well enough to get good grades in college. She concluded that his activities did not show impairment to such a degree as would limit him in focusing while performing unskilled work. The ALJ noted Bacus' mother's testimony that he was slow and unable to complete some tasks. The ALJ, however, determined that Bacus functioned much like other college students with mild mental impairment. Turning to Fletcher's testimony, the ALJ noted that Fletcher had significantly less contact with Bacus over the last one and

a half years, and thus, would not be in a position to notice the

improvements noted by Dr. McManus.

The ALJ determined that the objective medical evidence did not show

test scores indicative of mental incapacity, but rather an above-average IQ

and improving test scores on medical tests over the previous few years.

The ALJ concluded that Bacus' description of his daily activities further

contradicted the allegation of disability.  She stated that the activities

described demonstrated slight or mild limitations in daily activities and

social functioning.  She noted that no treating or attending physician or

mental health professional opined that Bacus would be unable to work.

The ALJ concluded that Bacus retained the ability to perform "unskilled,

entry level positions due to moderate problems with memory and cognition;

no climbing; no working at unprotected heights or near dangerous

machinery; and, no rapid paced work like assembly work where he would

be required to work by himself."  A.R. at 21.

Having determined Bacus' residual functional capacity, the ALJ

turned to step four and concluded that Bacus had no past relevant work.

Therefore, the burden shifted to the SSA, at step five, to show that Bacus

could perform some type of gainful employment that exists in the national

economy given his residual functional capacity, age, education, and past work experience.  The ALJ determined that Bacus' ability to work was significantly compromised at all exertional levels due to his non-exertional limitations.  Based on the vocational expert's testimony, the ALJ concluded that Bacus could, nevertheless, adjust to work that exists in significant numbers in the national economy, citing janitor, guard/doorkeeper, receptionist/information clerk, and cashier positions as examples. Therefore, the ALJ found that Bacus was not eligible for SSI payments.

D.   The Appeals Council

Bacus appealed the ALJ's decision to the SSA Appeals Council. Bacus' attorney submitted a statement, outlining alleged errors by the ALJ. A.R. at 10-11.  On April 30, 2004, the Appeals Council denied Bacus' request for review.  The Appeals Council stated that it considered the reasons Bacus disagreed with the ALJ's decision, but found  no basis for reversing the ALJ's decision.  Bacus filed his Complaint (d/e 1) in the present case on June 23, 2004.

E.   Supplemental Evidence

Bacus submitted three letters with his summary judgment motion. The first is a letter dated March 9, 2004, from Dr. McManus.  Plaintiff's

<u>Memorandum</u>, Ex. A, <u>March 9, 2004, Letter from Dennis Q. McManus,</u> <u>M.D.</u>  The letter states that Bacus had been under Dr. McManus' care since October 2000 for chronic hydrocephalus.  The letter summarized the evaluation by Dr. Zec, and noted "[t]here are clear cut difficulties with cognition related to Bacus' hydrocephalus."  <u>Id</u>.

Bacus also submitted two letters from Dr. Forsyth.  The first Forsyth letter, dated November 13, 2002, is discussed in subsection A above.  <u>See</u> <u>Plaintiff's Memorandum</u>, Ex. B.  The second Forsyth letter is dated February 20, 2004. <u>Plaintiff's Memorandum</u>, Ex. C, <u>February 20, 2004,</u> <u>Letter from William A. Forsyth, M.D., to Illinois Department of Central</u> <u>Management Services</u>.  In this letter, Dr. Forsyth states that although Bacus is currently stable, "he continues to have some significant residual symptoms and impairments.  Most significantly [sic] is his reduced capacity to function in daily activities compared to his peer group."  <u>Id</u>. at 1.  Dr. Forsyth notes that while Bacus is attending college, "he is unable to cope with the demands of a full curriculum and will thus require an extended period of education to achieve his degree."  <u>Id</u>.  Dr. Forsyth states that "[b]ecause of his Depression, Hydrocephalus, and ADD, [Bacus] experiences some significant difficulties with short-term memory,

concentration, and task completion which further impair his ability to function academically and limit his selection of career choices and ability to function on the job." Id. According to Dr. Forsyth, "[f]urther complicating [Bacus'] prognosis and ability to function is the chronic fatigue and lethargy he frequently experiences as a result of his Depression and Hydrocephalus." Id. Dr. Forsyth also notes that Bacus has "residual psychosocial impairments, which reduce his capacity for peer interactions and gainful employment," and that "[h]is reduced capacity for relationships and difficulty tolerating potentially stressful situations limits his ability to seek and maintain any gainful employment." Id.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must at least minimally articulate his analysis of all relevant evidence. Herron v. Shalala,

19 F.3d 329, 333 (7th Cir. 1994).   The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence.  <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995).

Bacus raises three arguments for reversal or remand.  First, Bacus contends that the ALJ mischaracterized the evidence and minimally addressed significant evidence supporting Bacus' claim.  Specifically, Bacus points to the medical evidence from Dr. Zec, Dr. Forsyth, Dr. Hurley, Dr. Kozma, and Dr. Taylor.  All of the evidence cited by Bacus relates to the determination of his residual functional capacity.  The Court, therefore, will address this argument together with Bacus' contention that the ALJ erroneously failed to explain the medical evidence that she relied upon in determining his residual functional capacity.  Bacus also contends that the ALJ erred in relying on the vocational expert's testimony relating to Bacus' ability to perform other work existing in significant numbers in the national economy.  Finally, Bacus seeks remand under sentence six of 42 U.S.C. § 405(g) for the consideration of new evidence.  As set forth below, all of Bacus' arguments are unpersuasive.

Turning first to residual functional capacity, the ALJ determined that Bacus retained the ability to perform unskilled, entry level work, with no

climbing, no working at unprotected heights or near dangerous machinery,

and no rapid paced work like assembly work where he would be required to

work by himself.  The regulations describe "unskilled work" as follows:

> work which needs little or no judgment to do simple duties that
> can be learned on the job in a short period of time. The job may
> or may not require considerable strength. For example, we
> consider jobs unskilled if the primary work duties are handling,
> feeding and offbearing (that is, placing or removing materials
> from machines which are automatic or operated by others), or
> machine tending, and a person can usually learn to do the job
> in 30 days, and little specific vocational preparation and
> judgment are needed.

20 C.F.R. § 416.968.

Bacus asserts that the ALJ ignored Dr. Zec's opinion regarding his

cognitive difficulties and the need for a job coach, as well as Dr. Zec's

neuropsychological reports.  Dr. Zec concluded that Bacus had difficulty

with new learning and memory and was clearly impaired with respect to

timed processing speed.  The ALJ took these factors into account when

determining Bacus' residual functional capacity.  Moreover, the ALJ cited

Dr. Zec's testing for the proposition that Bacus possessed a significantly

above-average IQ.  A.R. at 19.   Bacus' claim of error fails.

Bacus argues that the ALJ erroneously failed to compare Dr. Hurley's

evidence to any other medical evidence, citing S.S.R. 96-5p.  As set out in

S.S.R. 96-5p, an ALJ's residual functional capacity assessment should be based on a consideration of all relevant evidence in the record, including both medical evidence and relevant non-medical evidence.  The ALJ must provide appropriate explanations for accepting or rejecting medical source statements.  S.S.R. 96-5p.  In the present case, the ALJ provided a detailed explanation for rejecting Dr. Hurley's conclusions.  A.R. at 20.  The ALJ, noting that Dr. Hurley was an examining rather than a treating source, found Dr. Hurley's assessment to be directly contradicted by Bacus' description of his daily life and activities.  Dr. Hurley concluded that, given his problems with short term memory and processing speed, persistence and pace, Bacus was not a candidate for competitive employment due to the fact that he could not sustain his pace throughout a routine work day. The ALJ contrasted this opinion to the evidence that Bacus was actually performing "work like" tasks, i.e., attaining good grades in regular college courses, driving a car, and assisting others in using computers.  Id.  The ALJ further noted that Dr. Hurley did not discuss Bacus' actual functioning that was at odds with Dr. Hurley's opinion.  Id.  The ALJ provided an appropriate explanation for rejecting Dr. Hurley's conclusions as to Bacus' residual functional capacity.  Bacus' claim of error fails.

Bacus asserts, without development, that the ALJ misstated the

record by citing Dr. Kozma's medical report (Ex. 9F) for the proposition that

many of Bacus' symptoms of depression had been relieved by medication.

Bacus is correct that Dr. Kozma does not address the effectiveness of

medication on his depression.  With respect to Bacus' mental state, Dr.

Kozma noted that Bacus was "well oriented in all spheres, seems to have a

stable emotional state.  The intellectual functions seem to be intact.  The

thought content and communication are proper to the occasion."  A.R. at

217.  However, immediately after citing Ex. 9F, the ALJ discusses Dr.

Taylor's report, Ex. 10F, which expressly characterizes Bacus' depression

as in fair remission after favorable response to medication.  Bacus'

argument relating to the Ex. 9F citation is the type of nitpicking of an ALJ's

decision that the Seventh Circuit has rejected in favor of a commonsensical

reading.  See Johnson v. Apfel, 189 F.3d 561, 564

(7th Cir. 1999).  His claim of error fails.

Bacus further asserts that the ALJ failed to discuss any medical

evidence from Dr. Forsyth.  Bacus fails to identify any specific evidence

from Dr. Forsyth that the ALJ should have discussed.  The ALJ "is not

required to address every piece of evidence or testimony, but must provide

some glimpse into her reasoning." Dixon v. Massanari, 270 F.3d 1171,

1176 (7th Cir. 2001). Dr. Forsyth's records that appear in the Administrative

Record indicate that  Bacus' psychological condition had improved during

the course of his treatment.  Indeed, records from an October 17, 2000,

visit indicate that Dr. Forsyth encouraged Bacus to find a part-time job.

A.R. at 174.  Although it is unclear as to whether Dr. Forsyth's November

13, 2002, letter was before the ALJ, in his brief in this Court, Bacus

characterizes the letter as a summary of Bacus' treatment and Dr.

Forsyth's opinion of Bacus' limitations relating to his depression.  Plaintiff's

Memorandum, p. 4.  The letter indicates Dr. Forsyth's opinion that Bacus

was "currently stable in terms of his depression," but "functioning at a level

lower than what would be expected given his potential."  Id., Ex. B.  Dr.

Forsyth also opined that Bacus was "at risk of future relapses and residual

symptoms of depression that will significantly impair his ability to maintain

competitive employment in the future."  Id.

In assessing Bacus' case, the ALJ recognized that Bacus

experienced significant depression as a teenager.  A.R. at 19, 21.  The ALJ

addressed Bacus' depression and cognitive problems in assessing his

residual functional capacity.  A.R. at 21.  The ALJ noted that Bacus'

depression was characterized by Dr. Taylor as in "fair remission as a
response to medication." Id. The ALJ further noted that Bacus' cognition
had improved to the point that he was able to excel academically in a full-
time college curriculum, noting that he still displayed "mild difficulties." Id.
This conclusion is supported by the record. The ALJ did not err in failing to
specifically address Dr. Forsyth's evidence.

Similarly, the ALJ did not err in failing to recount portions of Dr.
Taylor's medical reports in her decision. Bacus contends that the ALJ
failed "to provide the most important findings of Dr. Taylor's medical report
that revealed that for sustained tasks the Plaintiff had some difficulty
maintaining his mental control and concentration and that the Plaintiff took
longer than it should have [sic] for the Plaintiff to reproduce a geometric
shape on paper, write his name, and to print the words stop, finish, and
fortune." Plaintiff's Memorandum, p. 16. Again, the ALJ "is not required to
address every piece of evidence or testimony, but must provide some
glimpse into her reasoning." Dixon, 270 F.3d at 1176. Here, the ALJ noted
that Bacus had difficulties with his cognition, but characterized these
difficulties as "mild" or "moderate" given the evidence of Bacus' daily
activities and the fact that he was able to excel academically in a full-time

college curriculum.  The ALJ's assessment of Bacus' residual functional capacity is supported by the record, and she did not error by failing to recount portions of Dr. Taylor's reports.

Bacus also argues that the hypothetical posed by the ALJ to the vocational expert was incomplete and, thus, cannot constitute sufficient evidence to support the determination that Bacus could perform other work existing in significant numbers in the national economy.  Bacus raises two arguments relating to the hypothetical.  First, he asserts that the hypothetical was insufficient because it failed to include any of Dr. Zec's findings.  He fails to address which aspects of Dr. Zec's findings were allegedly improperly omitted.  As outlined above, Dr. Zec reported that Bacus displayed cognitive impairments in new learning, memory, and timed processing speed and opined that a job coach would be "helpful" if Bacus were to get a job.  The ALJ limited the vocational expert to unskilled entry level work, to account for Bacus' problems with memory and cognition. The ALJ further excluded rapid paced work like assembly work where Bacus would be required to work alone and maintain a steady pace.  This accounted for his impaired timed processing speed.  The hypothetical question did not improperly exclude Dr. Zec's evidence.

Bacus further contends that the hypothetical question posed by the ALJ at the hearing was different than the residual functional capacity described in the decision.  Bacus fails to identify any specific differences or explain their significance.  Accordingly, his challenge fails because it is undeveloped.   Moreover, a comparison of the two passages reveals no material difference.  At the hearing, the ALJ asked the vocational expert to

> assume an individual who 21 years old [sic] with a high school education and college courses as described by Mr. Bacus. And, for purposes of this hypothetical, let's assume no past relevant work so we're talking about unskilled entry level work. Work which would not require climbing or work at unprotected heights or around unprotected hazardous machinery.  And no jobs would be rapid pace work like assembly where you're working by yourself and keep up a steady rapid pace.  Can you give me some examples of jobs that would fit the hypothetical?

A.R. at 331.  In her decision, the ALJ described Bacus' residual functional capacity as follows:

> limitation to unskilled, entry level positions due to moderate problems with memory and cognition; no climbing; no working at unprotected heights or near dangerous machinery; and, no rapid paced work like assembly work where he would be required to work by himself.

Id. at 21.  The ALJ did not err in relying on the vocational expert's opinion in formulating her decision.

Bacus also seeks a remand under sentence six of § 405(g) for consideration of the three letters attached to his Memorandum as exhibits. To secure such a remand, Bacus must show that good cause existed for the failure to incorporate this evidence in the record before the ALJ and that the evidence is material.  42 U.S.C. § 405(g); Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997).  Bacus, however, has failed to identify any evidence as material or to proffer any reason for his failure to present to the ALJ any material information contained in the three letters.  The Court therefore will not order a remand based on this evidence.

THEREFORE, the Commissioner of Social Security's Motion for Summary Affirmance (d/e 17) is ALLOWED.  The Plaintiff Micah Bacus' Motion for Summary Judgment (d/e 10) is DENIED.  The decision of the Commissioner of Social Security is AFFIRMED.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   August 18, 2005

FOR THE COURT:

s/ Byron G. Cudmore

_____
BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE